**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Cains, et al., | No. CV-16-01306-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| Elisa Grassi, et al., | |
| Defendants. | |

Defendants Elisa Grassi and Frank Sponle made statements to non-parties that Plaintiffs David Cains and Scott Bailey stole two horse embryos. Based on those statements, Cains, Bailey, and two related entities filed this suit against Grassi and Sponle, alleging claims for defamation, false light, and intentional infliction of emotional distress. Grassi and Sponle believe all three claims are barred by the applicable statutes of limitations. Viewed in the light most favorable to the plaintiffs, the evidence establishes Grassi and Sponle are right.

## BACKGROUND[1]

Plaintiffs are two individuals, David Cains and Scott Bailey, and two entities, Stonewall Farms Arabians, LLC, and Knight Media Networks, Inc. The parties have not provided a complete explanation of the relationship between Cains, Bailey, and the entities. It appears, however, that Cains and Bailey work in the Arabian horse industry

---

[1] Most of the background facts are undisputed. Where there are disputes, the following presents the facts in the light most favorable to Plaintiffs.

and the entities provide services to that industry. Stonewall Farms is "owned and controlled by . . . Bailey." As part of its business, Stonewall Farms owns numerous horses. Bailey also owns and controls Knight Media, a business devoted to operating horse-related websites. Bailey is not involved in all the transactions regarding horses owned by Stonewall Farms. Instead, Cains sometimes acts as Stonewall Farms' agent when Stonewall Farms sells its horses. For the most part, the presence of Stonewall Farms and Knight Media as plaintiffs can be ignored.[2]

Prior to February 2012, Stonewall Farms owned a horse named La Bella Versace ("Bella"). In February 2012, Cains began negotiating with Defendant Elisa Grassi regarding the sale of Bella. At that time, Grassi was acting as the agent for non-party Sheikh Ammar bin Humaid Al Nuaimi, the Crown Prince of the Emirate of Ajman ("Sh. Ammar"). During those negotiations, Cains told Grassi that any sale agreement would have to provide that Stonewall could retrieve two embryos from Bella. Grassi agreed to those terms and, on February 25, 2012, Bella was sold to Sh. Ammar. The written agreement executed by Cains and Grassi did not include any provisions regarding subsequent embryo retrieval.

After Bella was sold, she remained at Stonewall Farms' facility. While there, Cains retrieved two embryos from her. Bella was then shipped out of Arizona. In 2013, Grassi and her partner Defendant Frank Sponle had a disagreement with Cains and Bailey regarding the purchase of another horse. That disagreement led to Grassi and Sponle setting out to "financially ruin" Cains and Bailey ("Plaintiffs"). (Doc. 24 at 6). To do so, Grassi and Sponle began "making false statements about the Plaintiffs to others in the

---

[2] It is not clear why Stonewall Farms and Knight Media are involved in this case as the relevant statements did not involve either entity. And while a business entity is entitled to pursue a defamation claim under limited circumstances, Plaintiffs have made no effort to establish Stonewall Farms and Knight Media are sufficiently connected to Cains and Bailey such that statements regarding Cains and Bailey might have harmed the entities. *See Dombey v. Phoenix Newspapers, Inc.*, 724 P.2d 562, 577 (Ariz. 1986) ("Libel of an individual can cause injury to a corporation if they are so interconnected that a reasonable person would perceive harm to one as harm to the other.").

Arabian Horse Industry." (Doc. 24 at 6). Those false statements were that Plaintiffs had "stole[n] horse embryos from Sheikh Ammar." (Doc. 24 at 7). Unfortunately, Plaintiffs have not clearly identified each false statement Grassi and Sponle made. That is, Plaintiffs have not clearly identified who said what to whom.[3] Based on the evidence presented at summary judgment, however, the following statements are at issue.[4]

First, in approximately August 2013, Sponle told Sh. Ammar that "Cains had stolen an embryo from [Bella]." (Doc. 79-1 at 11; Doc. 74 at 80). Next, on some unidentified date prior to February 2014, Grassi told Sh. Ammar that Cains and Bailey had stolen embryos from Bella. And finally, also on some unidentified date prior to February 2014, Grassi and Sponle made statements to two other non-parties that Cains stole an embryo from Bella. (Doc. 79-1 at 11; Doc. 74 at 80).

After hearing about the alleged embryo thefts, counsel for Sh. Ammar sent Plaintiffs a letter titled "Pre-Litigation Notice and Legal Demand." (Doc. 74 at 34). That letter, dated February 4, 2014, recited the basic facts regarding the sale of Bella to Sh. Ammar and Cains' subsequent extraction of two embryos. According to the letter, the sale agreement did not include any terms allowing for the retrieval of two embryos after the sale. And by retrieving the two embryos, Plaintiffs had "committed the tort of conversion by appropriating the property of Sh. Ammar to [their] own beneficial use . . .

---

[3] The Court is not required "to scour the record" and locate other possible statements that might be lurking. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

[4] Plaintiffs' briefing references another statement made by Sponle to non-party Scott Benjamin. (Doc. 77 at 3). According to Cains' declaration, sometime in November 2014, Benjamin told Cains "that Frank Sponle told him that [Cains] had stolen an embryo from Sh. Ammar." (Doc. 79-1 at 6). Cains, however, would not be allowed to offer such testimony at trial. Cains would be attempting to offer the out-of-court statement by Benjamin for its truth, *i.e.* that Frank Sponle made the defamatory statement. Thus, the statement would be inadmissible hearsay and cannot be considered at summary judgment. *See, e.g.*, *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (noting courts should not consider inadmissible hearsay at summary judgment where evidence could not be presented in admissible form at trial). Plaintiffs could have introduced Sponle's statement through Benjamin. Fed. R. Evid. 801(d)(2) (opposing party statements are not hearsay). But Plaintiffs did not disclose Benjamin as a possible witness. Therefore, Benjamin could not be called at trial.

namely, the use of [Bella] to produce embryos." (Doc. 74 at 37). Based on Plaintiffs' actions, Sh. Ammar demanded immediate payment of $215,000. If Plaintiffs did not pay that amount within ten days, Sh. Ammar stated he would file suit against them. (Doc. 74 at 38). Bailey and Cains sent separate responses to this letter. Both of those responses assumed it was Grassi, not Sponle, who had told Sh. Ammar about the embryo theft.

On February 15, 2014, Bailey emailed his response to Sh. Ammar's letter. In that email, Bailey stated he had been "shocked and amazed" by the letter. (Doc. 74 at 55). In Bailey's view, Grassi was "a very vindictive, bitter and nasty person" who was doing "everything possible to destroy" Bailey's relationship with Sh. Ammar. Bailey stated Grassi was just using Sh. Ammar to "get back at [Plaintiffs]" and she was "telling you lies about the sale of that mare."

On February 22, 2014, Cains emailed his response to Sh. Ammar's letter. (Doc. 74 at 57). Cains' email attacked the substance of the allegation that retrieving embryos from Bella had not been part of the sale agreement. According to Cains, he had told Grassi that Bella's previous owner was entitled to one embryo and that Cains hoped to retrieve an embryo for himself. (Doc. 74 at 57). Cains claimed there had never been any intent to keep the embryo retrievals secret. And Cains described Grassi as "twisting the truth with regards to this sale" out of some desire to harm Plaintiffs. (Doc. 74 at 57).

Based on the letter from Sh. Ammar's counsel, and the responsive emails from Bailey and Cains, there is no genuine dispute of material fact that as of February 2014, Bailey and Cains knew Grassi had made a statement to Sh. Ammar about the allegedly unauthorized embryo retrievals. The letters and emails do not, however, explicitly identify Sponle as making a similar statement to Sh. Ammar.

The exact content of Grassi's and Sponle's statements to two other non-parties is not as clear. But it is clear when those statements were made. On some unidentified date prior to February 2014, both Grassi and Sponle spoke with those non-parties. Based on that conversation, rumors began to spread within the Arabian horse community regarding Plaintiffs' actions. In February 2014, Bailey and Cains attended the Scottsdale Arabian

Horse Show and it was at that show that Plaintiffs "first heard 'rumors' that [they] had stolen horse embryos from Sh. Ammar." (Doc. 74 at 3; Doc. 78 at 2). At that time, Plaintiffs believed the rumors were attributable to statements made by both Grassi and Sponle. (Doc. 78 at 2) ("The Plaintiffs suspected that the Defendants were the source of the rumors that the Plaintiffs had stolen embryos from Sh. Ammar."). Despite hearing the rumors, and receiving the letter making it abundantly clear that Grassi had told Sh. Ammar the embryo retrieval was unauthorized, Plaintiffs did not file suit at that time.

For unknown reasons, Sh. Ammar did not file his previously-threatened lawsuit until April 16, 2015. On that date Sh. Ammar sued Bailey, Cains, and Stonewall Farms for, among other things, retrieving embryos from Bella after she was owned by Sh. Ammar. CV-15-1045-PHX-DJH. On April 13, 2016, Sponle was deposed in that suit. During his deposition, Sponle admitted that prior to February 2014 he told Sh. Ammar that Plaintiffs had stolen embryos. In opposing summary judgment in the present suit, Bailey submitted a declaration stating Sponle's deposition was the first time he gained "knowledge of the source of the rumors" regarding embryo theft. (Doc. 79 at 2). Plaintiffs filed the present suit the same day as Sponle's deposition, April 13, 2016. (Doc. 1-2 at 5).

## ANALYSIS

Grassi and Sponle seek summary judgment by arguing the claims for defamation, false light, and intentional infliction of emotional distress ("IIED") are untimely. Grassi and Sponle also argue there is insufficient evidence to support the IIED claim. Because all three claims are untimely, there is no need to reach the evidentiary argument.

**I. Summary Judgment Standard for Timeliness**

This diversity suit is governed by Arizona law. *See, e.g.*, *Med. Lab. Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002) (Arizona law applies in diversity suit). Under Arizona law, it is generally the defendant's burden to establish a statute of limitations bars a claim. *Kiley v. Jennings, Strouss & Salmon*, 927 P.2d 796, 799 (Ariz. Ct. App. 1996). But Arizona law, like the law of other

jurisdictions, shifts the burden to the plaintiff in some circumstances. *See California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995) (California law places burden on plaintiff "to plead and prove the facts necessary to toll the limitations period once it is established that it would have otherwise commenced").

Under Arizona law, "[o]nce the defendant has established a prima facie case entitling him to summary judgment [on a statute of limitations defense], the plaintiff has the burden of showing available, competent evidence that would justify a trial." *Logerquist v. Danforth*, 932 P.2d 281, 284 (Ariz. Ct. App. 1996). In other words, once it appears a statute of limitations bars a claim, the burden is on the plaintiff to establish the statute does not apply because of some exception, such as delayed accrual or a form of tolling. *See id.* (burden is on plaintiff to establish delayed accrual); *McCloud v. State, Ariz. Dep't of Pub. Safety*, 170 P.3d 691, 694 (Ariz. Ct. App. 2007) (burden is on plaintiff to establish tolling). If the plaintiff fails to point to sufficient evidence that an exception applies, summary judgment must be entered in favor of the defendants. *See, e.g.*, *Breeser v. Menta Grp., Inc.*, 622 F. App'x 649, 650 (9th Cir. 2015) (affirming grant of summary judgment where plaintiff had proffered no evidence establishing delayed accrual).

**II. Defamation and False Light Claims Are Untimely**

The parties agree a one-year statute of limitations applies to the claims for defamation and false light. A.R.S. § 12-541. Plaintiffs filed this suit on April 13, 2016, meaning the defamation and false light claims are untimely if they accrued prior to April 13, 2015. Thus, the initial burden is on Grassi and Sponle to establish a "prima facie" case that the claims are untimely. If they do so, the burden will shift to Plaintiffs to establish there is at least a question of fact regarding timeliness.

The parties have briefed the defamation and false light claims under the assumption that the accrual rule for defamation applies to both claims. The Court will assume the parties are correct. Under that accrual rule, "the statute of limitations begins to run upon publication" of the offending statement. *Clark v. Airesearch Mfg. Co. of Arizona, a Div. of Garrett Corp.*, 673 P.2d 984, 986 (Ariz. Ct. App. 1983). A defamation

claim does not accrue immediately upon publication only when the relevant statement was "published in a manner in which it is peculiarly likely to be concealed from the plaintiff, such as in a confidential memorandum or a credit report." *Id.* A defamation claim based on that type of statement accrues only once the plaintiff "discovered or reasonable should have" discovered the publication. *Id.* at 985.

Arizona cases have applied this delayed accrual rule—known as the discovery rule—to defamation claims in an "exceedingly sparingly" manner. *Carey v. Maricopa Cty.*, No. CV-05-2500-PHX-ROS, 2009 WL 750220, at *6 (D. Ariz. Mar. 10, 2009). The discovery rule applies only if the defamatory statements were made "in an *inherently* secret or confidential manner." *Clark*, 673 P.2d at 987 (emphasis added). It is not enough that a plaintiff only learned about the statements months after they were made. For example, remarks among former or current coworkers will not qualify for the discovery rule even if the plaintiff did not learn about the communications for some time. *Carey*, 2009 WL 750220, at *6. That is because "remarks made among co-workers and their associates are simply not the sort of defamation that comes under the scope of the discovery rule." *Id.* at *7. Such remarks are not "published in an *inherently* confidential ma[nn]er." *Id.* at *7. Accordingly, a defamation claim based on such remarks accrues when the statements are published, regardless of whether the plaintiff had actual knowledge of them.

Here, Plaintiffs' briefing complains of three defamatory statements: a statement to Sh. Ammar by Grassi, a statement to Sh. Ammar by Sponle, and statements by Grassi and Sponle to non-parties. All of those statements were made prior to prior to February 2014. Because all three statements were made well-outside the one-year statute of limitations, Grassi and Sponle have established a prima case entitling them to summary judgment regarding timeliness. *Logerquist*, 932 P.2d at 284. The burden, therefore, is on Plaintiffs to establish the statute of limitations does not apply. Plaintiffs attempt to invoke the discovery rule but they point to no evidence the statements were made in an inherently confidential manner. In fact, the evidence establishes Plaintiffs had

sufficiently knowledge of the statements very close to the time they occurred.

Neither the statements to Sh. Ammar nor the statement to other non-parties were done in an inherently confidential manner. Regarding the statements to Sh. Ammar, there is no question that as of February 2014 Plaintiffs were aware of at least Grassi's statement. The emails Plaintiffs sent to Sh. Ammar prove Plaintiffs believed Grassi had made a defamatory statement to Sh. Ammar. The discovery rule does not help Plaintiffs in light of their actual knowledge of the statement. *See Larue v. Brown*, 333 P.3d 767, 771 (Ariz. Ct. App. 2014) (discovery rule did not apply when the plaintiffs knew of the statements and "were convinced Defendants had published them"). And while there is no definitive evidence Plaintiffs were aware of Sponle's statement to Sh. Ammar, there is also no evidence that Sponle's statement was done "in an inherently secret or confidential manner." *Clark*, 673 P.2d at 987. Because the burden was on Plaintiffs to establish the discovery rule should apply, Plaintiffs inability to establish Sponle's statement was done in an inherently secret or confidential manner is fatal to their claim.

As for Grassi's and Sponle's statements to the other non-parties, again Plaintiffs have failed to establish those statements were made in an inherently secret or confidential manner. Grassi and Sponle made the statements to non-parties who were involved in the Arabian horse industry. The statements were not kept secret or confidential as Plaintiffs heard rumors based on the statements in February 2014. And most importantly, Plaintiffs attributed those rumors to the statements by Grassi and Sponle. Thus, even assuming Plaintiffs lacked definitive knowledge that Grassi and Sponle made the statements, Plaintiffs should have investigated the source of the rumors. *Cf. ELM Ret. Ctr., LP v. Callaway*, 246 P.3d 938, 941 (Ariz. Ct. App. 2010) ("The discovery rule . . . does not permit a party to hide behind its ignorance when reasonable investigation would have alerted it to the claim."). The delayed accrual rule does not apply.

In sum, as of February 2014, Plaintiffs were aware Grassi had made a defamatory statement to Sh. Ammar, Plaintiffs have no evidence the statement by Sponle to Sh. Ammar was done in an inherently secret or confidential manner, and Plaintiffs have no

evidence the statements to other non-parties were made in an inherently secret or confidential manner. Plaintiffs heard rumors based on these statements and even believed Grassi and Sponle were the source of those rumors. Plaintiffs offer no authority that individuals who have definite knowledge of one defamatory statement, and strong suspicion of others, can sit back and wait to file suit until they have more complete knowledge. The present circumstances do not merit application of the discovery rule.

Plaintiffs make a final argument not aimed at the statements discussed above but at other statements that might have been made. According to Plaintiffs, "[t]here is no telling how many people the Defendants told that the Plaintiffs committed a criminal act; i.e., stole the personal property (a horse embryo) belonging to Sh. Ammar." (Doc. 77 at 7). And Plaintiffs contend that "every time the Defendants made the statement that Plaintiffs had stolen an embryo gave rise to a new cause of action." (Doc. 77 at 7). Plaintiffs apparently wish to base their claims on not-yet identified statements. Plaintiffs cannot do so.

It is true that each time a defamatory statement is made a separate cause of action exists. *State v. Superior Court In & For Cty. of Maricopa*, 921 P.2d 697, 702 (Ariz. Ct. App. 1996) ("Each communication of a defamatory statement, even though identical in content, constitutes a separate publication, giving rise to a separate cause of action."). And it is true that if some statements were made outside the one-year limitations period and some statements made within, Plaintiffs could base their claims on the latter statements and the statute of limitations would not apply to those statements. *Cf. Larue v. Brown*, 333 P.3d 767, 771-73 (Ariz. Ct. App. 2014) (noting one publication of statement was time-barred but republication was not). It is not true, however, that Plaintiffs can prevent summary judgment based on speculation that other, unidentified, defamatory statements were made. *See, e.g.*, *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) (summary judgment cannot be avoid by "speculation or guesswork"). The parties were given ample time to conduct discovery and the time for Plaintiffs to proffer evidence of defamatory statements was in response to the summary judgment

1 motion. Vague speculation that Grassi and Sponle committed other, unidentified acts
2 within the statute of limitations is not enough. The defamation and false light claims are
3 untimely.

### III. IIED Claim

A substantially similar analysis regarding timeliness applies to Plaintiffs' IIED claim. The only material difference is that an IIED claim is subject to a longer two-year limitations period. A.R.S. § 12-542(1). But as with the defamation and false light claims, the IIED claim is based only on the statements outlined above. And, as explained above, there is no genuine dispute of material fact regarding Plaintiffs' knowledge of Grassi's and Sponle's behavior as of February 2014. That month Plaintiffs received Sh. Ammar's letter and sent email responses. Plaintiffs also heard the rumors at the horse show. Plaintiffs do not point to any evidence of actions Grassi and Sponle took *after* February 2014 that supports their IIED claim. Thus, the IIED claim filed more than two years after February 2014 is untimely.

Plaintiffs' only attempt to avoid the statute of limitations regarding their IIED is to invoke the "continuing wrong" theory. Under that theory, "a series of closely related wrongful acts may be treated as alleging a continuing wrong that accrues for limitations purposes not at the inception of the wrongdoing but upon its termination." *Watkins v. Arpaio*, 367 P.3d 72, 75 (Ariz. Ct. App. 2016). The continuing wrong theory may apply to an IIED claim. *Id.* But even assuming it can be applied to an IIED claim, Plaintiffs would have to cite actions within the two-year limitations period for the continuing wrong theory to have any relevance. Plaintiffs have not done so. *See id.* at 77 (noting continuing wrong theory still required actions within limitations period). Thus, the IIED claim is untimely.

……
……
……
……

Accordingly,

**IT IS ORDERED** the Motion for Summary Judgment (Doc. 73) is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of Defendants.

Dated this 6th day of July, 2018.

Honorable Roslyn O. Silver
Senior United States District Judge